IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL S. UNGARSKY,   : CIVIL ACTION NO. 1:24-CV-1345
          :
   **Plaintiff**   : **(Judge Neary)**
          :
  **v.**       :
          :
CAROLINE WEBER   :
          :
   **Defendant**   :

## MEMORANDUM

This matter comes before the court upon the Report and Recommendation ("R&R") (Doc. 39) of Magistrate Judge Martin C. Carlson, wherein Judge Carlson recommends this court grant defendant, and police officer, Caroline Weber's motion (Doc. 25) to dismiss. Plaintiff Daniel S. Ungarsky, proceeding *pro se*, filed timely objections (Doc. 43) to the R&R, and Weber filed a reply, (Doc. 44). After careful review of the R&R and the parties' responses, the court will adopt the R&R, grant Weber's motion, and dismiss this case.

## I. Factual and Procedural History

On August 4, 2021, Ungarsky was arrested for his conduct at Hanna's Ice Cream Shop in New Cumberland, Pennsylvania. (Doc. 6 ¶ 10). According to Officer Weber's affidavit of probable cause,[1] completed based on information Weber learned from interviewing various witnesses at Hanna's, Ungarsky first came to Hanna's on August 2. (Doc. 6-1). While there, he asked several questions of the underaged,

---

[1] Attached as an exhibit to the amended complaint.

female workers at Hanna's, making them uncomfortable. (Id.). Eventually, one of the owners of Hanna's told Ungarsky he was making everyone in the store uncomfortable and that he had to leave the store, which he did. (Id.).

Ungarsky then returned the next day. (Id.). The owner warned him about making the staff at Hanna's uncomfortable. (Id.). At one point, Ungarsky asked one of the underaged female staff members when she would be done with work that night. (Id.). At this point, the same owner told Ungarsky he was making everyone feel uncomfortable and he had to leave, which he did again. (Id.).

Undeterred, Ungarsky returned yet again on August 4. (Id.). When he returned, the owner of Hanna's called the local police and Officer Weber was dispatched. (Id.). Though Ungarsky had already left the store by the time she arrived, another patron told Officer Weber that a man matching Ungarsky's description passed by her and told her underaged daughter she had "sexy legs." (Id.). These events formed the basis for Officer Weber's decision to arrest Ungarsky for stalking, harassment, and disorderly conduct. (Id.).

Between Ungarsky's arrest and his preliminary hearing, the district attorney's office added an additional charge of luring. (Doc. 6 ¶ 24). At a subsequent hearing on November 10, 2021, a Pennsylvania state court judge dismissed the charges of stalking and disorderly conduct but bound Ungarsky on the charges of luring and harassment. (Id. ¶¶ 26, 30). Prosecutors would eventually drop all charges against Ungarsky for this incident by October 2022. Docket sheet at 37-38, Commonwealth v. Ungarsky, CP-21-CR-2279-2021 [https://perma.cc/MMA7-GK3B].

Just about two years later, Ungarsky commenced this suit with a 19-count complaint. (Doc. 1). After an order from Judge Susan E. Schwab, Ungarsky filed an amended complaint, (Doc. 6), which is now the operative pleading. Judge Schwab then screened the complaint and issued an R&R recommending all defendants except for Officer Weber be dismissed. (Doc. 7 at 22). No objections were filed and the court adopted this R&R. (Doc. 8). After Officer Weber had been served with the amended complaint, she filed a motion to dismiss. (Doc. 25). That motion is the subject of the pending R&R from Judge Carlson, and it is ripe for disposition.

## II. <u>Standards of Review</u>

When reviewing an R&R from a magistrate judge, this court is to give *de novo* review of the contested portions of the report and afford "reasoned consideration" to the uncontested portions of the report. <u>See</u> <u>E.E.O.C. v. City of Long Branch</u>, 866 F.3d 93, 100 (3d Cir. 2017) (citations omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. <u>See</u> FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings, Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the

complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

### III. <u>Discussion</u>

Ungarsky's amended complaint contains nine counts against Officer Weber: one count of false arrest, four counts of malicious prosecution, one count of Fourth Amendment violations, one count of First Amendment violations, and two counts based on state law. (Doc. 39 at 5-6). Per Judge Carlson, none of the claims should survive.

### A. Judge Carlson's R&R

Judge Carlson concluded Ungarsky's false arrest claim fails on two fronts. First, he found it to be time-barred because Ungarsky's complaint was filed almost a year passed the statute of limitations. (Doc. 39 at 16-17). Next, he noted a state judge found probable cause existed to support at least some charges against Ungarsky. (<u>Id.</u> at 19-20). Because the lack of probable cause is a necessary element of a false arrest claim, and even an independent review of the facts supports a finding of probable cause, Judge Carlson recommends the false arrest claim be dismissed.[2] (<u>Id.</u>).

Turning to malicious prosecution, Judge Carlson noted an independent judicial officer found there was probable cause to charge Ungarsky with harassment. (<u>Id.</u> at 20-21). In Pennsylvania, harassment is defined as whenever someone, with the intent to harass, annoy or alarm another:

> (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same;
> (2) follows the other person in or about a public place or places;

---

[2] Further, the separate Fourth Amendment claim in Count 19 is duplicative of the false arrest claim.

(3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose;
(4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures;
(5) communicates repeatedly in an anonymous manner;
(6) communicates repeatedly at extremely inconvenient hours; or
(7) communicates repeatedly in a manner other than specified in paragraphs (4), (5) and (6).

18 PA.C.S. § 2709(a). Judge Carlson concluded that Ungarsky's repeated trips to Hanna's where he made the underaged female staff feel uncomfortable easily demonstrated probable cause for a harassment charge. (Doc. 39 at 20-21). Moreover, because the law at the time was unclear, as long as there was probable cause on the harassment charge, qualified immunity would bar the other malicious prosecution claims as well. (Id. at 26-27).

Ungarsky's remaining claims had a similar fate. Judge Carlson found his First Amendment claim failed because Pennsylvania courts have repeatedly found the Commonwealth's criminal harassment statutes constitutional. (Id. at 21-22). Finally, because all federal claims would be dismissed, Judge Carlson recommends the court dismiss, without prejudice, Ungarsky's state law claims. (Id. at 28-29).

### B. Ungarsky's Objections

Ungarsky's objects to Judge Carlson's R&R on three main fronts: (1) when Judge Schwab screened his complaint, she recommended his counts against Officer Weber to stand and so the court should not dismiss them now; (2) Officer Weber's account of the events are unduly prejudicial to Ungarsky; and (3) Judge Carlson confounded the factual events by confusing events that happened in Hanna's with an interaction that occurred outside. None of these arguments are convincing.

To begin, it is true that Judge Schwab recommended Ungarsky be allowed to mount a case against Officer Weber. (Doc. 7 at 22). It is further true that when conducting a screening review, the court applies the same standard as it would on a motion to dismiss. (See, e.g., id. at 10 (quoting 28 U.S.C. § 1915(e)(2)(B)(ii))). Nevertheless, the court finds it proper to still dismiss the claims against Officer Weber now.

When Judge Schwab reviewed the amended complaint, Officer Weber had not made an appearance in this case as the complaint had not yet been served on her. It would be manifestly unfair to parties to bind them to decisions made by courts in cases *before* they had even been served with the complaint. There is nothing in the statute on proceedings conducted *in forma pauperis* or in the Federal Rules of Civil Procedure that suggests defendants are meant to be bound by court decisions made before they were ever involved in a case.

Moreover, a court retains "the power to revisit prior decisions of its own or of a coordinate court in any circumstance . . ." in the right situation. Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997) (quoting Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817 (1988)). While courts should hesitate to revisit prior decisions already made, something known as the law of the case doctrine, this hesitation can give way in "extraordinary circumstances." Id. at 116-17. In general, the court finds it to be an extraordinary circumstance to bind a party to a decision made by a court when the party lacked the ability to contest that decision. This is especially the case here

7

where Judge Schwab's R&R did not offer an in-depth analysis of the viability of Ungarsky's claims against Weber. Thus, the court finds it proper to consider anew the arguments made by Officer Weber in her motion to dismiss.

Turning to his second objection, Ungarsky feels Judge Carlson relied on Officer Weber's prejudicial and biased affidavit. (Doc. 43 at ECF 5-6). Yet it was Ungarsky who attached the affidavit to his complaint. Moreover, he repeatedly cites the affidavit in reciting the facts in his complaint. (See Doc. 6 ¶¶ 11-15). While at certain points Ungarsky alleges Weber made "false accusations," (id. ¶ 136), he never states what specifically she lied about. For example, nowhere in his complaint does Ungarsky set forth his version of what happened at Hanna's. He also seems to admit to some of the conduct reported by Weber but argues it was constitutionally protected speech. (See id. ¶¶ 74-75).

Taking all of this together, the court concludes Judge Carlson properly relied on Officer Weber's affidavit. Given Ungarksy's attachment of and reliance on the document, along with his failure to specifically assert falsehoods in his complaint, the affidavit may be properly considered when deciding the motion to dismiss. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, *exhibits attached to the complaint* and matters of public record.") (emphasis added) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)); Doe v. Princeton Univ., 30 F.4th 335, 342 (3d Cir. 2022) ("When the truth of facts in an 'integral' document are *contested by the well-pleaded facts* of a

8

complaint, the facts in the complaint must prevail.") (emphasis added). To the extent Ungarsky believed Weber's affidavit to be biased or prejudicial, it was his responsibility to set forth the specific grounds for that belief. He failed to do so.

This leaves Ungarsky's last main objection. He asserts Judge Carlson confused some of the key facts of this case. One area of alleged confusion is that the events that happened inside of Hanna's are completely separate from the events relating to when Ungarsky was in his vehicle. (Doc. 43 at ECF 2-3). Ungarsky additionally asserts he only faced charges from his conduct as to the adult owner of Hanna's, and not any of the underaged juvenile employees. (Id. at ECF 9-11).

Neither of these points is persuasive. Ungarsky appears to operate under the belief he can only be charged for offenses where the adult owner of Hanna's is the victim. (Id. at 10-11). This belief appears to be based on the fact that only her name was listed as the victim on an internal police incident report. (See, e.g., Doc. 6-2 at ECF 2). The listing of only the adult owner of Hanna's as the victim on this document has no legal significance. In her affidavit of probable cause, Officer Weber sufficiently recounts Ungarsky's actions on all three days at Hanna's. (Doc. 6-1). It is for the totality of the recited conduct that Officer Weber arrested Ungarsky. (Id.). This is reinforced by his state habeas hearing where the Commonwealth called one of the underaged workers to testify about her experience with Ungarsky. (Doc. 6-5 at ECF 24-34). Thus, Officer Weber was allowed to consider Ungarsky's alleged conduct towards the minor workers at Hanna's when she decided to make her arrest.

9

### C. Adoption of the R&R

Having overruled Ungarsky's objections, the court reviews the remainder of the R&R for plain error. After careful review, the court concludes Judge Carlson's reasoning is sound and adopts it in full.[3] The undisputed facts of record are sufficient to establish probable cause for harassment. The court further finds Pennsylvania's harassment statute to be facially constitutional. Cf. Haagensen v. Pennsylvania State Police, 490 F. App'x 447, 452-53 (3d Cir. 2012) (finding another harassment statute to be constitutional because it was similar to the statute at issue in this case) (nonprecedential). Because Officer Weber had probable cause to arrest Ungarsky for harassment, this defeats his false arrest claim, his First and Fourth Amendment claims, and the malicious prosecution claim based on the harassment charge. Next, because there was probable cause for the harassment charge, Officer Weber is shielded by qualified immunity on the other malicious prosecution charges. See Rivera-Guadalupe v. City of Harrisburg, 124 F.4th 295, 303 (3d Cir. 2024). As all of his federal claims will be dismissed, the court declines

---

[3] Ungarsky also argues the statute of limitations should be tolled due to his *pro se* status and his efforts at pursuing his claims. However, equitable tolling of statute of limitations period is only available "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Nicole B. v. Sch. Dist. of Philadelphia, 237 A.3d 986, 996 (Pa. 2020) (quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994)). Officer Weber did not mislead Ungarsky in any way, nor did Ungarsky file an action in the wrong forum. Nor has he asserted any extraordinary factors preventing him from filing a lawsuit, only that he could not find a lawyer and researching his claims was difficult. Thus, there are no grounds to toll the statute of limitations period.

to exercise jurisdiction over the state law claims and dismisses those without prejudice.

The final question is whether to permit amendment. In this matter, Ungarsky attached Officer Weber's affidavit of probable cause and the transcript of his state habeas proceeding to his petition. (Doc. 6-1, 6-5). The court acknowledges Ungarsky claims Officer Weber and some of the witnesses at that hearing lied and made misrepresentations. (Doc. 43 at 6, 20). At the same time, Ungarsky appears to admit he made at least some of the statements, saying he had legitimate reasons for his conversations. (Id. at 7-8). However, a police officer receiving a report from a shop owner that an adult man came to a store *three* days in a row, after having been told to leave because he was making the underaged staff feel uncomfortable, has probable cause to believe the man is engaging in speech with no legitimate purpose.

To be clear to Ungarsky, this does not mean it needs to be proven beyond reasonable doubt whether he actually committed harassment. Rather, all that is needed is "a 'fair probability' that [he] committed the crime at issue." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)). Combining the affidavit of probable cause with the testimony—given under oath—at the habeas hearing, a reasonable person could conclude there was a fair probability of Ungarsky committing the crime of harassment.

Therefore, allowing any amendments would be futile. Ungarsky may contest some of the contents of the affidavit and what was said at the habeas hearing, but

11

reasonable individuals would be entitled to rely on the version of events contained therein. This may not be enough to convict Ungarsky for any crimes, but it is sufficient for probable cause to charge him with one. Thus, the court will not grant leave to amend the federal claims.[4]

## IV. Conclusion

People in the United States enjoy the freedom of speech. Such freedom does not necessarily extend to an adult male asking for the personal information of female, underaged store employees. This is especially so when he does so three days in a row. At the very least, such conduct is sufficient for a reasonable person to presume a crime is being committed, which would allow for a valid arrest and prosecution. The R&R will be adopted, all federal claims in this case be dismissed with prejudice, and the state claims will be dismissed without prejudice. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

May 22nd, 2026

---

[4] As the court finds no reason to allow leave to amend based on the pleadings, there would be no reason to allow for discovery in the case or supplement the record. Thus, Ungarsky's request (Doc. 45) for a continuance to allow him to interview one of the victims in this matter will be denied. The court also notes that the witness he seeks to question already testified—under oath—at his habeas proceeding.